BANKERS' LIFE INSURANCE CO. *v.* FREDERICK G. FLEET-
WOOD, and JOHN L. BACON, INSURANCE COMMISSIONERS.

May Term, 1903.

Present: TYLER, MUNSON, START, WATSON, and STAFFORD, JJ.

Opinion filed February 29, 1904.

*Insurance—Reserve Liability—Basis of Computation—In-
surance Commissioners—Discretion.*

Under Nos. 73, 76, Acts 1902, a foreign life insurance company which is-
sues one year term policies with an option of renewal, has the right
in computing its "reserve liability," to value the first year's in-
surance made on such policies as term insurance.

Neither § 1, No. 76, nor No. 77, Acts 1902, has so enlarged the discre-
tion of the insurance commissioners as to permit them to insist
that the re-insurance reserve which such company must have be-
fore allowed to do business in this State, shall be determined upon
some other valuation of such policies.

PETITION FOR MANDAMUS brought to the Supreme Court
for Washington County, and heard on demurrer to the peti-
tion at the May Term, 1903.

The petition alleged that the petitioner is a life insurance
company duly incorporated under the laws of the State of
New York; that on the 31st day of December, 1902, when a
final report is required from it by the laws of Vermont, it had
a capital stock of $100,000, fully paid in cash, invested in
securities readily convertible into cash, and in addition thereto
it had assets equal in value to its liabilities, reckoning the
re-insurance reserve as a liability; that it held funds in secure
investments equal to its reserve liability above all its other lia-
bilities; that on the 17th day of February, 1903, the petitioner
made application for a license for one year from April 1, 1903,
and filed with its application a report of its financial condition

in which its assets were stated to be $1,060,787.41; that among its liabilities was included the petitioner's valuation of its policies issued prior to January 1, 1903, as of December 31, 1902, in which they are construed and valued as one year term policies upon the actuary's tables of mortality with four per cent. interest, amounting to $777,752; that this valuation was duly certified by the New York Department of Insurance as being accurate according to the laws of that State; that the respondents made a valuation of the same policies disregarding the provision for a one year term, using the same mortality tables and rate of interest which raised the valuation to such a sum that the petitioner's assets were not equal to its liabilities; that the petitioner admits its assets are not equal to its reserve liability above all other liabilities on respondents' construction of its policies; that the respondents admit the petitioner's assets are equal to its reserve liability above all other liabilities on petitioner's construction of its policies; that the respondents refused to accept the petitioner's valuation contained in its financial report, although duly certified by the New York Insurance Department, for the reason that its valuation of its policies therein contained is on the one year principle, and accordingly refused it a license.

*B. F. Fifield* for the petitioner.

This case is between the same parties, involves the construction of the same policies, and is upon substantially the same state of facts as arose when this case was here before. 73 Vt. 1. That case is decisive of this. To the same effect is *Rosenplaenter* v. *Provident, etc. Soc.,* 91 Fed. 728; *McDougall* v. *Assur. Soc.,* 135 N. Y. 551; *Baldwin* v. *Provident, etc. Assur. Soc.,* 47 N. Y. 463.

The Insurance Commissioners have no discretion because of recent statutes to insist upon any different valuation. *Peck*

v. *Powell,* 62 Vt. 296; *Hendlee* v. *Cleveland,* 54 Vt. 142;
*Beard* v. *Townsend,* 26 Vt. 670; 51 Cal. 339; 41 Mo. 226;
78 Ill. 389; 10 Wend. 285; 81 Cal. 542; 79 Mich. 364; 76,
Cal. 550.

*William B. C. Stickney* for the respondents.

MUNSON, J., (for a majority.)    This case is between
the same parties, touches the construction of the same policy,.
and stands upon the same facts, as that disposed of in *Bank-
ers' Life Insurance Co.* v. *Insurance Commissioners,* 73 Vt.
I, 48 Atl. 435.    But certain statutes relating to the duties of
the Insurance Commissioners have been enacted since that
case was decided, and it is claimed that these have so changed'
the law as to require a different disposition of the case now
submitted.

Under V. S. 4178, as it read when the former case was
determined, a foreign joint stock life insurance company could
not do business in this State unless it had, in addition to the re-
quired capital, "assets equal in amount to its outstanding lia-
bilities," reckoning "the premium reserve on life risks based'
on the actuaries' tables of mortality, with interest at four per
cent., as a liability."    As amended by No. 73, Acts of 1902,
the above clause reads as follows, "assets equal in value to its
outstanding liabilities, reckoning the reinsurance reserve as a
liability"; and the omitted direction for computing the reserve
is embodied, with modifications and further provisions, in No.
76, Acts of 1902.

The act of 1902 provides for computing the net value of
all outstanding policies issued before January first, 1903, upon
the basis of the actuaries' tables of mortality, with interest at
four per cent.; and for computing the net value of all out-
standing policies issued after December thirty-first, 1902, upon

the basis of the American experience table of mortality, with interest at three and one-half per cent.; and for charging the company with the value of a certain annuity "in every case where the actual premium charged for an insurance is less than the net premium for such insurance computed according to" the respective tables and rates aforesaid; and declares that the "aggregate net value so ascertained" of all the policies of the company "shall be deemed its reserve liability."

It was considered in the case already decided that the only requirement regarding the computation of the premium reserve was that it be based upon certain tables of mortality and the prescribed rate of interest. We are now to inquire whether the present law calls for anything more.

The rule established by the act of 1902 is given to ascertain the "reserve liability" of the company. It makes the "net value" of the policies the measure of this reserve liability, and prescribes the method of computing the net value. The term used in the former law was "premium reserve" instead of "reserve liability," but it is not necessary to inquire whether "reserve liability" is anything different, for whatever it may be, it is declared to be the same as net value, and the method of arriving at net value is given. The term "net value" is an addition, but it is not necessary to consider what this would ordinarily imply, for its scope in this connection is determined by a specific rule. The result of the problem cannot be enlarged by giving it a different name if the process of computation remains the same. The elements of the computation are the tables of mortality, the rates of interest, and the addition of the value of an annuity when the premium charged for an insurance is less than the net premium as determined by those tables and rates. The last is an additional provision, but it is not claimed that this has any bearing upon the question now in issue. So the computation depends entirely upon the

tables of mortality and the rate of interest, as it did when our former decision was made.   Nor do we find anything new affecting the application of the rule.   It is said in the petitionees' brief that the present law provides for a computation of the net value of all outstanding policies of life insurance upon a prescribed basis, without making any distinction between policies providing for a preliminary one year term with an option for renewal, and any other class of policies. This is equally true of the former law; which, after prescribing rules relating to fire, health, accident and marine risks, provided for a computation of the reserve on "life risks." This term covered the company's policies of life insurance without distinction as to classes, and left nothing to be added by saying *all* the policies.   All policies were considered in our former opinion, but were valued for what they were construed to be.   If the Legislature intended to require that policies construed by the court as term policies should be valued as if they were not, it has failed to make its intention manifest.

It remains to consider whether the discretion of the commissioners has been so enlarged as to permit them to require a different valuation.   The provisions that the commissioners shall grant a license when they "are satisfied" that the company has complied with certain requirements, and may renew such license as long as they consider the company "safe and entitled to public confidence," and may revoke the license if the company violates any of our laws relating to insurance companies,—which are the only provisions referred to by the petitionees in their argument upon the question of discretion,—were all in existence when our former decision was made.   The question of discretion as affected by the first of these provisions was specially considered in the opinion.   The only subsequent provisions touching the discretion of the commissioners are those found in § 2 of No. 76, Acts of 1902,.

and in V. S. 4205 as amended by No. 77, Acts of 1902. The only one of these that can possibly be claimed to give a further discretion in the matter under consideration is that contained in the amendment to V. S. 4205. This section formerly authorized the commissioners to visit and examine the "condition and affairs" of a foreign insurance company when they had reason to doubt its solvency. The section as amended authorizes the commissioners to do this when they determine it to be prudent, and provides that "such examinations shall include a computation of the reinsurance reserve." It may be doubted if the section as amended covers more than the original provision, for an examination of the "condition and affairs" of a company to determine its solvency must necessarily include some ascertainment of its reserve. But if the amendment authorizes an ascertainment of the reserve in some manner not contemplated by the original act, it certainly does not authorize a computation regardless of the statutory rules.

The phraseology of the statute of 1902 is that of the Massachusetts law, under which it is held by the Supreme Court of the State that the rulings of the commissioner made in good faith must be accepted as final; and it is a general rule that when one State adopts the statute of another its courts will give that statute the construction it has received in the State from which it is taken. But this rule cannot be considered applicable when the transcribed statute is substituted for provisions already construed by the courts of the State making the adoption, and the new law is found to be substantially the same as the old.

The law remaining unchanged in the respects considered, the case must be disposed of in accordance with our former decision.

*Judgment that the prayer of the petition is granted, and that a mandamus issue directing the commissioners to grant a license as prayed for; without costs.*